UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**SHERRY SMITH**  CASE NO. **09-11759**
    DEBTOR  CHAPTER 7

**PERSONAL CREDIT PLAN, INC.**
PLAINTIFF

V.  ADV. NO. **09-1135**

**SHERRY SMITH**
DEFENDANT

### MEMORANDUM OPINION

Personal Credit Plan, Inc. ("Personal Credit") contends that debtor Sherry Smith's misrepresentations on loan applications render her debt to it nondischargeable under 11 U.S.C. §523(a)(2)(A) and (B). The obligation is dischargeable because the evidence established that Personal Credit did not reasonably or justifiably rely on Smith's misrepresentations in deciding to loan her money.

### FACTS

**The Personal Credit Loan Application**

Personal Credit made a $500 personal loan to Sherry Smith on May 5, 2008 to cover closing costs for a condominium lease/purchase. Ms. Smith later applied on November 3, 2008 for a $1,200 loan to make home repairs. Personal Credit alleges that it would not have loaned the defendant money but for her misrepresentations on the credit applications.

**The Debtor's Alleged Misstatements and Omissions**

The debtor's May 2008 application listed as her creditors Personal Credit (to which she was already indebted for a December 2007 loan), Union Credit ("Union") and CitiFinancial. Her November 2008 application listed those debts as well as the May 2008 debt to Personal Credit. Smith did not

dispute that she failed to disclose several debts that pre-dated her applications to Personal Credit,[1] among them a $2,500 debt to the Louisiana Department of Revenue and Taxation; a $15,000 obligation to the Internal Revenue Service; a $600 debt to Mr. Money; and $2,754.59 she owed to the United States Department of Education.  Ms. Smith testified that she did not reveal the omitted debts to Personal Credit because the Personal Credit representative who took her application only asked her to list debts on which she was making monthly payments.

Personal Credit's form loan application included a section for calculating a monthly budget, which Personal Credit used to determine the borrower's ability to repay the loan.  Smith's May 5, 2008 application reflected total net monthly income of $2,600, comprising $2,200 from her employer Blue Cross and Blue Shield of America, Inc. ("Blue Cross") and $400 Smith earned as a Mary Kay sales representative.  Ms. Smith's expenses included her automobile payment, mortgage payment and a monthly payment to Union.  Her recurring monthly payments totaled $1,194, leaving her $1,200 to pay the Personal Credit debt.  The November 3, 2008 loan application represented that Ms. Smith was making even more money than she did in May 2008.  That document recited that the debtor's Blue Cross salary had increased to $2600 a month and that her monthly earnings from Mary Kay sales had gone up to $600.  The November 2008 loan application gave Smith's total monthly debt and expenses as $1,951.

Ms. Smith testified that she did not personally complete the second application but instead gave the information to a Personal Credit employee over the telephone and signed it when she arrived at Personal Credit's office to pick up the loan proceeds.  In any case, the manner in which Ms. Smith communicated the information to Personal Credit is irrelevant because according to Tim White, Personal Credit's owner and manager, Ms. Smith reviewed the completed loan application before signing it.

Mr. White testified that he followed Personal Credit's practice and obtained Ms. Smith's credit report when she applied for the loans.[2]  White said that the credit reports did not list Smith's debts to the

---

[1]  See Debtor's Schedule F, P-10.

[2]  May 5, 2008 Equifax credit report, Exhibit P-3.  November 3, 2008 Equifax credit report, Exhibit P-4.

2

Louisiana Department of Revenue, the Internal Revenue Service, Mr. Money or the United States Department of Education. However, the credit reports both disclosed two unidentified liens: one for $6408 recorded in November 2008 and the second for $438 recorded in August 2001. Mr. White did not dispute that the liens appeared on the credit reports but testified that he did not know what the lien notations meant. Despite not knowing the significance of the credit report notations, Mr. White testified that he did not ask Ms. Smith about the liens.

According to Mr. White, because Personal Credit relied on its calculation of Ms. Smith's budget to determine whether she would be able to repay her debt to Personal Credit, he would not have made the loan to the debtor had he known about the Internal Revenue Service or Louisiana Department of Revenue debts since those entities have the power to garnish wages and thereby reduce the applicant's income available to meet other obligations. White also testified that the loan from Mr. Money would have affected his decision to loan the debtor money because it was a "payday" loan, which would have been a "red flag" regarding the debtor's financial stability.

Finally, Mr. White claimed to have had no reason to believe that the debtor was not actually making between $400 and $600 every month selling Mary Kay products. White stated that had he known Smith did not take home at least $400 a month from her Mary Kay business, he would have concluded that she lacked enough income to repay Personal Credit and so would not have made the loan.

**The Debtor's Chapter 7 Petition**

Ms. Smith filed chapter 7 on November 9, 2009. At the January 31, 2010 meeting of creditors she acknowledged signing the schedules and verifying their accuracy.[3] Smith admitted to a Personal Credit representative at the meeting that she had not told the plaintiff about her tax debts, her debt to Mr. Money or her unpaid student loan when she applied for the November 2008 loan.[4] However, she insisted

---

[3]  Transcript of January 31, 2010, meeting of creditors, p.4, lines 1-9 (Exhibit Personal Credit 10).

[4]  The Personal Credit representative inexplicably did not ask Ms. Smith why she had failed to disclose these debts in the May 2008 loan application.

3

that Personal Credit had not asked her about those debts.[5] Ms. Smith also testified at the §341 meeting that she really had no idea how much she earned from Mary Kay sales in 2008.[6]

## ANALYSIS

### A. Personal Credit Failed to Prove That its Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(A)

Personal Credit's complaint alleges that the debtor's actions render her debt nondischargeable under 11 U.S.C. §523(a)(2)(A) which excepts from discharge any debt:

"for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ---

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's … financial condition …."

Section 523(a)(2)(A) applies to debts obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *Gen. Elec. Cap. Corp. v. Acosta*, 406 F.3d 367 (5th Cir. 2005), citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992).

To prevail under 11 U.S.C. §523(a)(2)(A), Personal Credit must prove that: (1) the debtor made representations; (2) the debtor knew the representations were false when they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) it relied on the representations; and (5) it sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), citing *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991).

The evidence established that the debtor falsely represented to Personal Credit that her only debts were those listed in the credit application and that she was earning $400 each month by selling Mary Kay products. Personal Credit also proved that Smith knowingly signed the loan applications containing false information to get the loans and warranted their truthfulness knowing that the applications were materially incorrect. The debtor admitted under oath at the meeting of creditors that she knew of the

---

[5] Transcript of January 31, 2010 meeting of creditors, p. 11, lines 18-22; p. 19, lines 1-6.

[6] Transcript of January 31, 2010 meeting of creditors, p. 20, ll. 5-18.

debts to the IRS, Louisiana Department of Revenue, United States Department of Education and Mr. Money before she applied for the November 2008 Personal Credit loan. She also admitted that the amount she claimed to earn from Mary Kay sales was an estimate rather than her actual income. Smith disclosed none of this on her loan application or to any Personal Credit employee when she applied for the loan, and so the evidence established that Ms. Smith intended to deceive the plaintiff.

The debtor's indifference to the accuracy of the application by not disclosing substantial tax and other debts, and essentially fabricating a number for Mary Kay earnings, is not a defense to Personal Credit's claim. The debtor's lack of care indicates a reckless disregard for the accuracy of the information in the documents for purposes of 11 U.S.C. §523(a)(2)(A) and supports a finding that the debtor intended to deceive Personal Credit.[7]

The court gives no credence to Smith's testimony that she didn't tell Personal Credit about her tax, student loan and check cashing company debts because no one from Personal Credit asked her about debts on which she was not making monthly payments.

Smith's deception does not conclude the analysis of the plaintiff's claim. Personal Credit is not entitled to a declaration that Smith's debt is nondischargeable merely because it established that Smith misled the lender. Under section 523(a)(2)(A), Personal Credit also must prove that it *justifiably* relied on the debtor's misrepresentations in deciding to extend credit. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Justifiable reliance is gauged by "'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *In re Vann*, 67 F.3d 277, 283 (11th Cir. 1995) (quoting *Prosser & Keaton on Torts* at 751). "'It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has

---

[7] "'When it is not disputed that a loan application was signed by the [d]ebtor, then the contents of the application should, in general, be attributed to the [d]ebtor and entitled at least to great weight, and perhaps decisive effect.'" *In re Butski*, 184 B.R. 193, 195 (Bankr. W.D.N.Y. 1993), citing *In re Kabel*, 184 B.R. 422, 425 (Bankr. W.D.N.Y. 1992).

discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation on his own.'" *Id*. at 283 (quoting *Prosser & Keaton on Torts* at 752).

Personal Credit did not establish that it *justifiably* relied on the contents of Smith's loan application, even if it did rely on them to loan the debtor money. The credit reports Mr. White obtained before approving both the May 2008 and November 2008 loans plainly reflect two liens against the debtor. Mr. White did not deny at trial that the liens appeared on the debtor's credit report when he approved the loans; he explained that because he relied only in part on the credit report and because Ms. Smith's income-to-debt ratio was sufficient to make the payments, he decided that no further inquiry about the liens was necessary to assess her qualification for the loan. Personal Credit unwisely disregarded these signs of Smith's financial history which should have put it on notice and led Mr. White to delve further into the debtor's financial condition. Personal Credit's reliance on the debtor's statements was not justifiable given the information on the defendant's credit report.

### B. Personal Credit also Failed to Prove that the Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(B)

Bankruptcy Code section 523(a)(2)(B) renders nondischargeable a debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by —

    (B) use of a statement in writing —

        (i)      that is materially false;

        (ii)      respecting the debtor's or an insider's financial condition;

        (iii)      on which the creditor to whom the debtor is liable for such…credit reasonably relied; and

        (iv)      that the debtor caused to be made or published with intent to deceive."

A written statement is materially false under 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *Matter of Norris*, 70 F.3d 27, 30 (5th Cir. 1995), quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991).

6

In contrast to section 523(a)(2)(A), a declaration of nondischargeability under section 523(a)(2)(B) requires the creditor to prove that it *reasonably* relied on the debtor's false statements:

> The reasonableness of a creditor's reliance…should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).

Personal Credit proved that the debtor's loan application contained materially false statements about her financial condition.[8] However, although Smith's misrepresentations to Personal Credit are reprehensible they do not entitle Personal Credit to judgment because Personal Credit failed to prove that it reasonably relied on the debtor's misrepresentations.

The credit reports Personal Credit obtained to evaluate Ms. Smith's loan applications unambiguously disclosed that two creditors had filed liens against Smith in the public record. Those notations should have alerted Personal Credit to a matter in Smith's credit history that merited investigation; in any case Personal Credit's awareness of the liens vitiates the plaintiff's claim that it reasonably relied on the information Smith furnished on the applications. Personal Credit's decision to ignore the "red flags" in the credit reports it obtained before making the loans to Ms. Smith negates its claim of reasonable reliance on the content of Smith's applications.

---

[8] *See* above, pp. 1 through 4. *See also Cadle Co. v. Orsini*, 2007 WL 1006919 at *5 (Bankr. E.D. Tex. 2007) (citation omitted) ("[a]s long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement to the non-dischargeability complaint under section 523(a)(2)(B) is met.")

## CONCLUSION

Personal Credit failed to prove that Sherry Smith's debt to it is nondischargeable under both 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(B). Accordingly, the debt is dischargeable.

Baton Rouge, Louisiana, December 7, 2010.

<u>s/Douglas D. Dodd</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE